IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| EDWIN R. JONAS III,<br><br>Plaintiff,<br><br>vs.<br><br>LAKE COUNTY LEADER, EMILIE RICHARDSON and BRYCE GRAY,<br><br>Defendants. | CV 13-30-M-DLC-JCL<br><br>FINDINGS &<br>RECOMMENDATION |

Pro se Plaintiff Edwin R. Jonas III ("Jonas") brings this action against a local newspaper, its editor, and one of its reporters, for publishing a series of allegedly defamatory articles about him during his campaign for election as a county justice of the peace. The newspaper's editor, Defendant Bryce Gray, and its reporter, Defendant Emilie Richardson (collectively "Defendants"), have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Defendants' motion should be granted in part and denied in part as set forth below.

**I.	Background**[1]

In August 2012, Jonas registered as a candidate for the position of Lake County Justice of the Peace in the November 6, 2012, election. At all times relevant to this action, Jonas "was actively campaigning for election." Dkt. 1, ¶ 5.

On September 24, 2012, Jonas was contacted by Defendant Emilie Richardson ("Richardson"), a reporter with the Defendant *Lake County Leader* newspaper. Richardson was investigating a story initiated by a call from one of Jonas's political opponents, regarding allegations that Jonas's ex-wife had domesticated a foreign judgment against him for child support and alimony. On September 27, 2012, the *Lake County Leader* published an article written by Richardson titled "Justice of Peace candidate faces $700,000 child support bill." Dkt. 9-1, at 2. Jonas contacted Bryce Gray ("Gray") the next day and demanded an immediate retraction, explaining that he did not owe any alimony or child support. Gray apparently refused to print a retraction, but agreed to remove the story from the internet.

Approximately one week later, on October 4, 2012, the *Lake County Leader*

---

[1] The following facts are taken from the Complaint and the disputed newspaper articles, which are properly considered by the Court on this Rule 12(b)(6) motion. *See e.g Daniels-Hall v. National Education Assoc.*, 629 F.3d 992, 998 (9th Cir. 2010).

published two more articles about Jonas, the first one titled "Lake County Justice candidate loses ranch." Dkt. 9-1. The article reported that Jonas's ex-wife had taken possession "of the cattle and sold them at auction market," and had also taken "possession of the property occupied by [Jonas] and ejected him from the residence." Dkt. 9-1, at 4. Jonas claims the story was defamatory because it failed to mention that he "had disputed the underlying obligation" and inaccurately "led the public to believe that" that he owed his ex-wife so much money that the ranch was sold to satisfy the debt. Dkt. 1, ¶ 21.

The second article published that day was titled "Candidate maintains innocence." Dkt. 9-1, at 6. It reported Jonas's version of events, and explained that he "defiantly stated that he does not owe $700,000 to his ex-wife in unpaid child support, and upholds that in actuality, he was awarded custody of his children in 1991." Dkt. 9-1, at 6. Jonas alleges this article was also defamatory because the headline suggested "by implication" that he "was presumed guilty of some crime." Dkt. 1, at 9.

Jonas commenced this action in January 2013, advancing state law claims for libel against the *Lake County Leader*, Richardson, and Gray. Jonas alleges that Defendants intentionally, maliciously, and recklessly "published false, defamatory, and libelous material" in the three newspaper stories. Dkt. 1, ¶¶ 15, 24. Jonas

claims the stories damaged his reputation in the community, and seeks damages for the "[e]motional and mental anguish, humiliation, embarrassment and depression" he alleges he suffered because of their publication. Dkt. 1, ¶¶ 16, 25.

Defendants move to dismiss for failure to state a claim upon which relief may granted on the ground that the three newspaper articles "are not reasonably capable of sustaining a defamatory meaning within First Amendment safeguards of federal and Montana law." Dkt. 9, at 2.

## II. Legal Standard

Fed. R. Civ. P. 12(b)(6) permits a party to move for dismissal where the allegations of a pleading "fail[] to state a claim upon which relief can be granted." A cause of action may be dismissed under Fed. R. Civ. P. 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Where, as here, a plaintiff is proceeding pro se, the court should construe the pleadings liberally. *See e.g. Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988); *Ortez v. Washington County Oregon*, 88 F.3d 804, 807 (9th Cir. 1996).

As a general rule, "a court may not consider material beyond the complaint in ruling on Fed. R. Civ. P. 12(b)(6) motion." *Intri-Plex Technologies* 499 F.3d at 1052. But the court "may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. National Education Assoc.*, 629 F.3d 992, 998 (9th Cir. 2010) (citations omitted). The three newspaper articles described above are referred to in Jonas's complaint and are central to his libel claims. Because neither party questions the authenticity of the copies attached to Defendants' motion, the Court may consider the articles in determining whether Jonas has stated a claim for relief.

## III. Discussion

In Montana, defamation is effected by libel or slander.[2] Mont. Code Ann. § 27-1-801. Libel is defined by statute as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation that exposes any person to hatred, contempt, ridicule, or obloquy or causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation" Mont. Code Ann. § 27-1-802.

The test for defamation is a stringent one. *McConkey v. Flathead Electric Co-op.*, 125 P.3d 1211, 1229 (Mont. 2005). The threshold question "is whether the statements, even if false, are capable of bearing a defamatory meaning." *McConkey*, 125 P.3d at 1130. The court may resolve this question as a matter of law. *McConkey*, 125 P.3d at 1130. *See also Hale v. City of Billings*, 986 P.2d 413, 417 (Mont. 1999). In making this determination, the court should interpret the "statement 'from the standpoint of the average reader, judging the statement not in isolation, but within the context in which it is made.'" *Knievel v. ESPN, Inc.,* 393 F.3d 1068, 1074 (9th Cir. 2005) (*quoting Norse v. Henry Holt & Co.*, 991 F.2d 563,

---

[2] Because jurisdiction in this case is premised on diversity of citizenship, the Court looks to the substantive law of Montana as the forum state for purposes of determining whether Jonas has stated a claim for relief. *See Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

567 (9th Cir. 1993).

For defamatory words to be actionable, they "must be of such nature that the court can presume as a matter of law that they will tend to disgrace and degrade [the plaintiff] or cause him to be shunned and avoided." *McConkey*, 125 P.3d at 1130 (*quoting Wainman v. Bowler*, 576 P.2d 268, 271 (Mont. 1978). "It is not sufficient, standing alone, that the language is unpleasant and annoys or irks [the plaintiff], and subjects him to jests or banter, so as to affect his feelings." *McConkey*, 125 P.3d at 1130 (*quoting Wainman*, 576 P.2d at 268).

A claim "of defamatory libel may not be based on innuendo or inference," and "allegedly libelous statements must be aimed specifically at the person claiming injury." *McConkey*, 125 P.3d at 1130. Sarcastic and hyperbolic statements do not satisfy the stringent test for defamation. *McConkey*, 125 P.3d at 1130. Nor do expressions of opinion, which generally do "not carry a defamatory meaning" and so are not actionable. *McConkey*, 125 P.3d at 1130.

"A public figure cannot recover damages upon a claim for defamation without a showing of actual malice." *Roots v. Montana Human Rights Network*, 913 P.2d 638, 640 (Mont. 1996). The same showing is also required of "limited purpose public figures, or persons who have voluntarily injected themselves or are drawn into a particular public controversy and become a public figure for a limited

range of issues." *Roots*, 913 P.2d at 640.

Defendants argue that Jonas has failed to state a claim for libel because the newspaper articles he complains of are not reasonably capable of bearing a defamatory meaning. Defendants assume for purposes of his motion that the three articles "were untrue and made with malice as alleged in the Complaint." Dkt. 9, at 4. But even making those assumptions, Defendants argue Jonas's claim fails as a matter of law because "a statement that a candidate for justice of the peace owed child support and had his ranch and cattle confiscated as a result of a divorce proceeding does not convey defamatory meaning as the term has been defined in Montana." Dkt. 9, at 4. Defendants also takes the position that the headline "Justice Candidate Maintains Innocence" is a non-actionable statement of opinion. Dkt. 9, at 4.

To the extent Defendants argue Jonas has not stated an actionable libel claim based on the two articles published in the October 4, 2012 edition of the *Lake County Leader*, they are correct. The first of those articles ran under the headline "Lake County Justice candidate loses ranch" and reported that "[a]fter almost 10 years of disputing nonpayment, the outcome [of Jonas's longstanding dispute with his ex-wife] was the sale of the cattle and property of Blacktail Mountain Ranch Co., LLC." Dkt 9-1, at 4. The article stated that Jonas's ex-wife "took possession

of the cattle and sold them at auction market" and had also "taken possession of the property occupied by [Jonas] and ejected him from the residence." Dkt. 9-1. The article also explained that Jonas and his counsel had pursued three unsuccessful appeals of the state court's charging order, which "authorized the court-appointed receiver to sell the property and assets of the Blacktail Mountain Ranch Co. In order to provide compensation of non-payment to [Jonas's ex-wife] with the remainder going to [Jonas]." Dkt. 9-1, at 4.

Jonas claims this story was defamatory because it failed to mention that he "had disputed the underlying obligation" and inaccurately led the public to believe that he owed his ex-wife so much money that the ranch was sold to satisfy the debt. Dkt. 1, ¶ 21. But the fact that the article did not provide Jonas's side of the story, so to speak, does not make it defamatory. This is so particularly in view of the second article that appeared in that day's edition of the *Lake County Leader* under the headline "Candidate maintains innocence." The second article detailed Jonas's version of events, explaining that he denied owing his ex-wife any money. Dkt. 9-1, at 6. The article quoted Jonas's explanation, which was that his ex-wife "had this crooked judge order enormous amounts of alimony." Dkt. 9-1, at 6.

Jonas claims that the headline under which this second article appeared was itself libelous because it suggested by implication that he was presumed guilty of a

crime. Read in isolation, a headline stating that "Candidate maintains innocence" might well suggest to the average reader that the candidate had been accused of a crime. But any defamatory meaning is lost when considered in context. The article itself simply describes Jonas's version of his longstanding civil dispute with his ex-wife.

While Jonas may well have found these two articles annoying and irksome, they do not meet the stringent test for defamation. The content of the articles would not have exposed Jonas to hatred, contempt or ridicule, and would not have caused others to shun or avoid him. Because the articles are not reasonably capable of defamatory meaning, they do not provide a basis for an actionable libel claim.

The same cannot necessarily be said, however, of the article that appeared in the newspaper's September 27, 2012 edition. That article appeared under the headline "Justice of the Peace candidate faces $700,000 child support bill." Dkt. 9-1, at 2. The opening sentence of the article reported that Jonas was "scheduled to appear in district court...in connection with alleged non-payment of over $700,000 in child support and alimony." Dkt. 9-1, at 2. The article also mentioned that a roughly $700,000 judgment "for unpaid child support and alimony" had been entered against him in 2006. Dkt. 9-1, at 2. It explained that the Lake County District Court had entered "a charging order, and order for appointment o[f]

receiver, foreclosure of lien, and of sale of property against [Jonas] to enforce the 2006 judgment...." Dkt. 9-1, at 2.

In Montana, the failure to meet a child support obligation may, under certain circumstances, be punishable as a misdemeanor or felony criminal offense. Mont. Code Ann. § 45-5-621. Such a failure can also serve as the basis for a misdemeanor or felony offense under federal law. 18 U.S.C. § 228. As Defendants concede, falsely accusing someone of having committed a crime can be actionable as defamation. Dkt. 20, at 5. *See, Spreadbury v. Bitterroot Publishing*, 856 F.Supp.2d 1195, 1199 (D. Mont. 2012) ("Under Montana law, defamation per se exists when a private actor falsely accuses an individual of committing a crime.").

In *McCusker*, for example, the Montana Supreme Court concluded that statements by two homeowners that their builder "cheated them, stole from them, and charged them for labor and materials that did not go into their house directly charge[d] him with the crime of larceny without the aid of innuendo" and so were "slanderous per se". *McCusker*, 452 P.2d at 414. And in *Keller*, the Court found that a store manager who falsely stated that the plaintiff had tried to purchase an item with a worthless check had effectively charged the plaintiff with a crime, which was slander per se. *Keller*, 108 P.2d at 609. *See also Burr v. Winnett Times Pub. Co.*, 258 P. 242 (Mont. 1927) (article that "impliedly" charged a member of

-11-

the board of county commissioners with conducting "all county business behind closed doors" and moving "county records to safety deposit boxes" was libelous per se).

Assuming, as Defendants do for purposes of their motion, that the article about Jonas owing $700,000 in unpaid alimony and child support was untrue and published with malice, it was reasonably capable of bearing a defamatory meaning. The article's headline plainly stated that Jonas faced a $700,000 child support bill, and the text stated that a roughly $700,000 judgment had been entered against him for unpaid child support and alimony. The average reader would understand by those statements that Jonas had engaged in conduct that is illegal, namely, the failure to pay child support or alimony.

Defendants make much of the fact that the article did not say Jonas was facing any criminal charges for failure to pay child support or alimony. But the proper focus is not on whether the state had actually charged Jonas with a criminal offense, but whether the language in the article falsely charged, or stated, that Jonas had done something that is commonly understood by the average person as constituting a crime. That is precisely what this article did – it stated that Jonas had not paid $700,000 in child support and alimony, thereby conveying to the reader that he had committed acts that are defined as a crime. *Keller*, 108 P.2d at

-12-

608 (focusing on whether there was "some statutory provision which defines as a crime the acts and conduct attributed to have been committed by plaintiff in the alleged slanderous statement").

As the *Keller* court explained, to constitute libel, it is not necessary that the language used "charge the commission of a crime with the technical accuracy of an information or indictment." *See Keller*, 108 P.2d at 609. A defamatory charge may "impliedly...be made so plainly that it can have only one meaning and may constitute libel per se." *Keller*, 108 P.2d at 609 (*quoting Burr v. Winnett Times Pub. Co.*, 258 P. 242, 245 (Mont. 1927)). Because the September 27, 2012, article reported that Jonas had committed acts that are commonly understood as a crime, and because Defendants assume for present purposes that the report was false and published with malice, Jonas has stated an actionable claim for libel.

For the first time in their reply brief, Defendants allude to what may be a better argument. As Defendants point out, all three articles were reporting about the ongoing court battle arising from Jonas's divorce proceedings. And Defendants note that "most of what was contained in the September 27th article was earlier reported by Justice Cotter, writing for the Montana Supreme Court in affirming the district court on the parties' cross-appeals." Dkt. 20, at 7 (referring to *Jonas v. Jonas*, 2012 WL 1699951 (Mont. May 15, 2012).

It is well-established that "[t]ruth is a complete defense to a claim of defamation." *Citizens First Nat. Bank of Wolf Point v. Moe Motor Co.,* 813 P.2d 400, 404 (Mont. 1991). Likewise, a publication is not defamatory if it is privileged. *See e.g. Small v. McRae*, 651 P.2d 982, 991 (Mont. 1982). Montana law provides that a "privileged publication" includes one made "by a fair and true report without malice of a judicial, legislative, or other public official proceeding or of anything said in the course thereof." Mont. Code Ann. § 27-1-804(4). Newspaper articles that describe allegations against an individual in a judicial proceeding are privileged publications as a matter of law under Mont. Code Ann. § 27-1-804(4). *Lence v. Hagadone Inv. Co.*, 853 P.2d 1230, (Mont. 1993), overruled on other grounds by *Sacco v. High Country Independent Press, Inc.*, 896 P.2d 411 (Mont. 1995).

Thus, it may well be that all of the articles Jonas complains of, including the September 27 2012, article, are privileged as a fair and true reporting of the court proceedings against Jonas. If that is the case, then Jonas's libel claims would fail as a matter of law. But Defendants do not make that argument here. Instead they expressly assumes for purposes of discussion that the disputed articles were false and published with malice. Jonas specifically alleges in his complaint that if the state court records had been "properly researched," Defendants would have

learned that Jonas in fact "owed no alimony or child support and that offsetting trust funds embezzled by" Jonas's ex-wife "had more than satisfied any claim by her for support." Dkt. 1, ¶ 20.  In light of those allegations, which this Court must take as true for purposes of determining whether Jonas has stated a claim for relief, the Court cannot say as a matter of law, on the present record, that the September 27, 2012, article is privileged as a fair and true report of the state court proceedings. Notably, Defendants have expressly reserved their "right to assert both statutory and common law privileges relating to the substance of the articles." Dkt. 20, at 3.   Whether Defendants can prevail on any such defense is properly left to later resolution, assuming they raises the issue in a subsequent motion.

## IV.    Conclusion

Accordingly,

IT IS RECOMMENDED that Defendants' motion to dismiss be GRANTED as to the two articles published in the October 4, 2012, edition of the *Lake County Leader*, but DENIED as to the September 27, 2012, article titled "Justice of Peace candidate faces $700,000 child support bill."

DATED this 1st day of April, 2013

_____
Jeremiah C. Lynch
United States Magistrate Judge